Pennsylvania Rural Electric Association et al., Petitioners *v.* Pennsylvania Public Utility Commisson, Respondent. Pennsylvania Electric Company et al., Intervenors.

Argued November 15, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Anthony C. Adonizio,* with him *William E. Mowatt,* for petitioner, Pennsylvania Rural Electric Association.

*Miles R. Lynn, Jr.,* with him *J. Michael King, Lynn & King,* for petitioner, Central Electric Cooperative, Inc.

*Barbara S. Kahoe,* Assistant Counsel, with her, *Louise A. Knight,* Deputy Chief Counsel, *Kandace F. Foust,* Assistant Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Alan Michael Seltzer, Ryan, Russell & McConaghy,* for intervenor, Pennsylvania Electric Company.

*Martin Nadorlik,* for intervenor, Cranberry Mall Company.

OPINION BY JUDGE BARRY, April 10, 1984:

This appeal results from an order of respondent, Pennsylvania Public Utility Commission (PUC), which held that intervenor, Pennsylvania Electric Company (Penelec) was the proper retail electrical supplier for an entire enclosed shopping mall (Cranberry Mall) located in Cranberry Township, Venango County. The present dispute involves an interpretation of various provisions of the Retail Electric Supplier Unincorporated Area Certified Territory Act (Act), Act of July 30, 1975, P.L. 113, 15 P.S. §3277 (Supp. 1983-84), a portion of which provides:

> This act shall apply only to the establishment of boundaries of certified territory between retail electrical suppliers where one such supplier is an association or cooperative corporation and the other such supplier is subject to the jurisdiction of the Public Utility Commission for rates, terms and conditions for electrical service.

15 P.S. §3277.1 (Supp. 1983-84).

Penelec is a retail electrical supplier subject to the jurisdiction of the PUC. Petitioner Pennsylvania Rural Electric Association (PREA) is a non-profit corporation which represents thirteen rural electric

cooperatives of the Commonwealth, one of which is petitioner, Central Electric Cooperative, Inc. (Central). Central provides retail electric service in Venango County, as does Penelec.

Construction of the Cranberry Mall commenced in the summer of 1980. When completed, the mall will be approximately 535,000 square feet in size, with three large department stores, numerous smaller shops and parking areas surrounding the entire structure. The entire complex is owned by intervenor, Cranberry Mall Company. The structure is under a single roof and all tenants have inside access to the indoor common areas of the mall.

As both Penelec and Central provide retail electric service in the area of the mall, a dispute arose between the two concerning which was the appropriate retail electric supplier. Specifically, both contended that they should supply such service to Hill's Department Store (Hill's), which was located in the westernmost portion of the Mall. While all of the other tenants have electricity costs built into their montly rent, Hill's has its own meters to monitor electricity use.

To resolve such jurisdictional disputes, Section 4 of the Act provides:

(a) Except as otherwise provided in this section, no retail electric supplier shall furnish retail electric service in the certified territory of another retail electric supplier.

(b) Except as otherwise provided in this section, the boundaries of the certified territory of each retail electric supplier in any unincorporated area are hereby set as a line or lines substantially equidistant between its existing distribution lines and the nearest existing distribution lines of any other retail electric supplier in every direction, with the result that

there is hereby certified to each retail electric supplier such unincorporated area which in its entirety is located substantially in closer proximity to one of its existing distribution lines than the nearest existing distribution line of any other retail electric supplier.

(c) On or before one year after the effective date of this act, or, when requested in writing by a retail electric supplier and for good cause shown, such further time as the commission may fix by order, each retail electric supplier shall file with the commission a map or maps showing all of its existing distribution lines as of the effective date of this act. The commission shall prepare or order to be prepared and filed in the manner and form prescribed by the commission within six months thereafter a map or maps of uniform scale to show, accurately and clearly, the boundaries of the certified territory of each retail electric supplier as established under subsection (b) and shall issue such map or maps of certified territory to each retail electric supplier.

(d) In each unincorporated area, where the commission shall determine that the existing distribution lines of two or more retail electric suppliers are so intertwined or located that subsection (b) cannot reasonably be applied, the commission shall, after hearing, certify the service territory or territories for the retail electric suppliers so as to promote the legislative policy stated in section 3.

15 P.S. §3280 (Supp. 1983-84) (footnote omitted). Furthermore, Section 5 of the Act provides:

(b) Except as provided in subsections (c) and (e) any new electric-consuming facility

located in an unincorporated area which has not as yet been included in a map issued by the commission, pursuant to section 4(c), or certified, pursuant to section 4(d), shall be furnished retail electric service by the retail electric supplier which has an existing distribution line in closer proximity to such electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier. Any disputes under this subsection (b) shall be resolved by the commission.

15 P.S. §3281 (footnotes omitted).

At the time the present dispute arose, the PUC had neither issued maps delineating a supplier's territory under Section 4(c) nor certified such territory pursuant to Section 4(d). If such a map had been drawn according to the method called for in Section 4(b), the boundary line would divide the area occupied by the mall in such a manner that Hill's would be within Central's territory while the remaining eighty-five per cent of the mall would be within the territory of Penelec. Since the PUC had taken no such action, the Administrative Law Judge (ALJ) relied upon Section 5(b) of the Act to determine whether Penelec or Central should supply electricity to Hill's.

In applying Section 5(b), the ALJ was required to apply the Act's definition of "electric-consuming facilities", *i.e.*, "everything that utilizes electric energy from a central station source", 15 P.S. §3278 (Supp. 1983-84) to the present facts. Central argued that Hill's was a separate "electric-consuming facility" while Penelec countered that the entire mall complex constituted a single "electric-consuming facility". Central's nearest existing distribution line was, while being 1305 feet from the center of the mall, 592 feet from Hill's. On the other hand, Penelec's

nearest existing distribution line was 570 feet from the center of the mall and 730 feet from Hill's.

The ALJ ruled that the entire complex was a single "electric-consuming facility" and, since Penelec's existing distribution line was closer to the center of the mall than the line of Central, he held that Penelec was the appropriate retail supplier. Following the denial of exceptions, both Central and PREA appealed to the PUC, which upheld the determination of the ALJ. This appeal followed.

Petitioners argue that both the Commission and the ALJ erred in interpreting the Act's definition of "electric-consuming facility" in such a manner to reject their contention that Hill's was a separate facility for purposes of the Act. The Commission held that the entire mall should be considered a single "electric-consuming facility" for two reasons. First, the entire mall complex was under a common roof and Hill's had access points to the common areas of the mall. More importantly, the Commission believed that holding Hill's to be a separate facility would lead to results which would be contrary to the legislatively declared purpose of the Act.

It is hereby declared to be in the public interest that, *to encourage the orderly development of retail electric service in unincorporated areas, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the Commonwealth of Pennsylvania, to prevent the waste of materials and natural resources, to minimize inconvenience, diminished efficiency and higher costs in serving the consumer,* and otherwise for the public convenience and necessity, the Commonwealth is divided into geographical areas, establishing the unincorporated areas within which

each retail electric supplier is to provide retail electric service on an exclusive basis.

15 P.S. §3279 (Supp. 1983-84) (emphasis added). The Commission opined if an individual store within a mall complex was deemed a separate facility, duplication of electric facilities would result, contrary to the avowed purpose of the Act.

Petitioners first claim that the Commission erred in considering the purposes of the Act, relying upon the portion of the Statutory Construction Act, Act of December 6, 1972, P.L. 1339, 1 Pa. C. S. §1501 (Supp. 1964-82), which states, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C. S. §1921(b). As already stated, the Act defines an "electric-consuming facility" as *"everything* that utilizes electric energy from a central station source." (Emphasis added.) Webster's New Collegiate Dictionary (1974) defines "everything" as "all that exists". To argue that "all that exists" "that utilizes electric energy from a central station source" is a definition which is "clear and free from all ambiguity", as petitioners do, is absurd, especially in the context of this case. When attempting to decide if one portion of a large shopping mall can constitute a separate "electric-consuming facility", we believe valid points exist to support both the affirmative and the negative answer. In light of the overly broad definition used by the legislature, we believe the question can be properly answered *only* by considering the spirit of the Act.

The Commission adopted the ALJ's findings of fact which support the legal conclusion that construing the entire mall complex as a single "electric-consuming facility" is more in keeping with the stated purposes of the Act. Petitioners do not argue that any of these

factual findings are not supported by substantial evidence. Furthermore, aside from their argument that the Act is unambiguous, petitioners offer no other challenge to the aforementioned legal conclusion of the Commission and, we, therefore, will not disturb that conclusion.

Accepting that the definition of an "electric-consuming facility" is not free from ambiguity, petitioners presented the Commission with an alternate proposal whereby Central could supply electricity to Hill's without running afoul of the Act's stated purposes and, therefore, would allow this Court to conclude that Hill's was a separate "electric-consuming facility". When construction of the mall was commenced, Penelec ran an underground cable around the mall which would provide electricity to the complex. Central proposed purchasing electricity from Penelec and establishing a wholesale distribution station on or near the underground loop. Central would then provide electricity to Hill's from this station. We fail to perceive how this alternate proposal changes the Commission's decision that Hill's is not to be considered a separate "electric-consuming facility."

The Commission adopted the ALJ's findings of fact which included the following, "32. A wholesale metering point established on Penelec's [underground loop] for Central to resell power at retail to Hill's would necessitate additional equipment." Again, petitioners do not challenge the legitimacy of this finding. As Penelec's underground loop will encircle the mall in any event, we fail to perceive how the alternate proposal will avoid the "wasteful duplication of distribution facilities" or prevent the "waste of materials or natural resources" when the proposal does no more than add an additional step to a line already quite capable of serving the electrical needs of Hill's.

474

### ORDER

Now, April 10, 1984, the order of the Pennsylvania Public Utility Commission adopted January 29, 1982, and entered July 16, 1982, at Nos. P-80120251 and C-80122281, is hereby affirmed.