522 A.2d 1187

William B. Jackson, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Evalynn B. Welling,* with her, *Daniel L. Haller,* for petitioner.

*Terrence J. Buda,* Assistant Counsel, with him, *Louise A. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, March 20, 1987:

William Jackson (petitioner) petitions for review of an order of the Pennsylvania Public Utility Commission

(PUC) which precluded him from filing medical certifications in substantially the same form as one filed by him on September 28, 1984.[1]

The petitioner, who suffers from severe chronic obstructive lung disease and arteriosclerotic heart disease, complicated by recurrent bouts of pneumonia, purchases natural gas from Peoples Natural Gas Company (Peoples) to heat his home. Since 1979, the petitioner's treating physician has provided Peoples with a series of medical certifications concerning these illnesses in order to prevent termination of the petitioner's gas service pursuant to the PUC's medical emergency provisions.[2] The treating physician has continuously indicated that such termination would prove to be fatal to the petitioner. In August 1984, however, Peoples petitioned the PUC for waiver of the petitioner's July 1984 medical certification. A hearing was subsequently held, after which the administrative law judge (ALJ) established a payment schedule and ordered that the petitioner could submit future medical certifications for new or different ailments but could not use a form substantially the same as one dated September 28, 1984,[3] which was ad-

---

[1] The petitioner seeks review only of paragraph seven of the PUC's July 11, 1985 order which states:

> 7. That any future medical certifications presented by Mr. Jackson that substantially are in the same form as the one dated September 28, 1984, shall not prevent Petitioner from using the procedures specified in paragraph 9 of this Order.

Paragraph nine authorizes the utility to terminate service upon compliance with 52 Pa. Code §§56.81-56.99, should the petitioner fail to adhere to his payment schedule.

[2] The medical emergency provisions are found at 52 Pa. Code §§56.111-56.118.

[3] The September 28, 1984 medical certification listed the petitioner's conditions as chronic obstructive lung disease and arteriosclerotic heart disease.

mitted into evidence at the hearing. This order was based on the ALJ's conclusion that the medical certification procedures of the medical emergency provisions do not apply where the affliction is chronic and where there is no favorable prognosis. The petitioner filed exceptions to the disallowance of similar medical certifications in the future, and the ALJ denied these exceptions. On appeal, the PUC recalculated the appropriate method of payment but affirmed the order of the ALJ which prohibited medical certifications similar to the one filed on September 28, 1984.

We initially note our scope of review of a PUC order, which is limited to determining whether or not there was a violation of constitutional rights, an error of law, or a lack of substantial evidence to support the findings. *Mobilfone of Northeastern Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 73 Pa. Commonwealth Ct. 340, 458 A.2d 1030 (1983).

The petitioner contends that the PUC committed an error of law in interpreting the medical emergency provisions to prohibit the use of the medical certification procedures where the illness is chronic. The PUC, however, contends that its interpretation of its own regulations which prohibit the petitioner from filing future medical certifications similar to the one filed on September 28, 1984 based on the same chronic illness is controlling.[4]

---

[4] The PUC, as support for its interpretation of the regulations, cites Docket No. L-820073 published at 13 Pa. B. 1250-1252, which pertinently provides:

Although the Law Project has expressed reservations about shortening the period covered by medical certifications (60 days to 30 days), we believe this is consistent with our intention that relief from the immediate utility service terminations, for acute rather than chronic medical conditions, be granted. This section is not intended to serve as a means for avoiding utility payments over an indefinite period of time.

· It is true, of course, that an administrative agency's interpretation of its own regulations is entitled to controlling weight, but we may disregard the agency inter-· pretation if it is shown to be plainly erroneous or inconsistent with the regulation. *Mill v. Pennsylvania Public Utility Commission,* 67 Pa. Commonwealth Ct. 597, 447 A.2d 1100 (1982). We must determine, therefore, whether or not the regulations here can be interpreted as limiting the medical certification procedures to nonchronic illnesses, and, if so, whether or not those regulations are consistent with the statute under which they were promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

The PUC contends that Section 56.111 when read in conjunction with the other emergency provisions, in particular, Section 56.118, clearly indicate that the medical certifications apply only to short term illnesses. We disagree.

Our review of the relevant regulations[5] indicates that medical certifications, valid for thirty days, may be

---

The regulations at issue, here, contain no language limiting medical certifications to acute illnesses, and because we find no ambiguity in the regulations, we need not read the legislative history so as to impose additional requirements or restrictions not present in those regulations. *Gaibis v. Werner Continental, Inc.,* 565 F. Supp. 1538 (1983) (same rules of construction apply to administrative regulations and statutes, and starting point is plain language and ordinary meanings of words therein, which will be determinative unless there is an apparent ambiguity or expression ·of legislative intent to the contrary evident on the face of such regulations or statutes).

[5] The relevant regulations are found at 52 Pa. Code §§56.111-56.118, and they pertinently provide:

§56.111. General provision.

No utility shall terminate, or refuse to restore, service to any premises when any occupant therein is certified by a physician to be seriously ill or affected with a medical condition which will be aggravated by a cessation of service or failure to restore service.

. . . .

used to prevent a utility's termination of service where a medical condition will be aggravated by such termination. Furthermore, certifications may be renewed where the ratepayer has met his duty to equitably arrange to

### §56.113. Medical certifications.

Certifications initially may be written or oral, subject to the right of the utility to verify the certification by calling the physician or to require written confirmation within 7 days. All certifications, whether written or oral, must include all of the following:

(1) The name and address of ratepayer in whose name the account is registered.

(2) The name and address of the afflicted person and his relationship to the ratepayer.

(3) The nature and anticipated length of the affliction.

(4) The specific reason for which the service is required.

(5) The name, office address, and telephone number of the certifying physician.

### §56.114. Length of postponement; renewals.

Service shall not be terminated for the time period specified in a medical certification, the maximum length of the certification shall be 30 days.

(1) *Time period not specified.* If no length of time is specified or if the time period is not readily ascertainable, service shall not be terminated for at least 30 days.

(2) *Renewals.* Certifications may be renewed in the same manner and for the same time period as provided in §56.112 (relating to postponement of termination pending receipt of certificate), §56.113 (relating to medical certifications) and this section if the ratepayer has met the obligation under §56.116 (relating to duty of ratepayer to pay bills). If a utility wishes to contest such renewal, it shall follow §56.118(3) (relating to the right of utility to petition the Commission).

. . . .

### §56.116. Duty of ratepayer to pay bills.

Whenever service is restored or termination postponed pursuant to the medical emergency procedures, the ratepayer shall retain a duty to equitably arrange to make payment on all bills.

make payment on all bills and the petitioner, here, does not contest the payment schedule. Likewise, a utility may petition the PUC to contest the validity of a certification under Section 56.118.

These regulations, while consistent with the statute under which they were promulgated,[6] mention neither

§56.117. **Termination upon expiration of medical certification.**

When the initial and all renewal certifications have expired, the original ground for termination shall be revived and the utility may terminate service without additional written notice, if notice previously has been mailed or delivered pursuant to §56.91 (relating to general notice provisions). The utility shall comply with §§56.93-56.96 (relating to notice procedures prior to termination).

§56.118. **Right of utility to petition the Commission.**

(a) A utility may petition the Commission for waiver from the medical certification procedures for the following purposes:

(1) *Contest the validity of a certification.* To request an investigation and hearing by the Commission or its designee when the utility wishes to contest the validity of the certification.

(2) *Terminate service prior to expiration of certification.* To request permission to terminate service for the failure of the ratepayer to equitably arrange to make payments on all bills.

(3) *Contest the renewal of a certification.* To request permission to terminate service, in accord with §§56.81-56.99 (relating to termination of service) when the ratepayer has not met his duty under §56.116 (relating to duty of ratepayer to pay bills), provided that the utility has informed the ratepayer of that duty under §56.116.

(b) A utility shall continue to provide service while a final Commission adjudication on the petition is pending. All petitions under this section shall be accompanied by a utility report described in §56.152 (relating to contents of the utility company report).

[6] The medical emergency provisions of 52 Pa. Code §§56.111-56.118 were promulgated under Sections 331, 501, 504, 1301, 1305, 1501 and 1504 of the Public Utility Code, 66 Pa. C. S. §§331, 501, 504, 1301, 1305, 1501 and 1504.

the duration nor the nature of an illness as factors to be considered for medical certification purposes. Inasmuch as we can find no requirement, either explicitly stated or implied in the regulations, that the medical certification procedures apply only to acute, short-term illnesses, we will reverse the order of the PUC insofar as it prohibited the petitioner from filing certifications similar to the one filed on September 28, 1984.

ORDER

AND NOW, this 20th day of March, 1987, Paragraph Seven of the order of the Pennsylvania Public Utility Commission in the above-captioned matter is reversed insofar as it prohibited the petitioner from filing future medical certifications alleging chronic obstructive lung disease and arteriosclerotic heart disease.