533 A.2d 1084

Central Electric Cooperative, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 6, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*J. Michael King, Lynn & King,* for petitioner.

*Mark C. Morrow,* Assistant Counsel, with him, *Terryl A. Moreland,* Assistant Counsel, *William C. Matthews, II,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent.

*Deborah M. DePaul,* with her, *John L. Munsch* and *Thomas K. Henderson,* for intervenor, West Penn Power Company.

OPINION BY JUDGE DOYLE, November 20, 1987:

Central Electric Cooperative, Inc. (Central) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission), which allowed Dennis and Linda McCormick (McCormicks) to remain customers of West Penn Power Company (West Penn) despite the fact that the McCormicks' residence is located within Central's service territory. We reverse.

The McCormicks in 1978 installed their all-electric mobile home on a piece of property they had purchased in West Sunbury, Pennsylvania. Central's transmission line was located 146 feet, 7 inches from the McCormicks' residence. West Penn's transmission line is 226 feet, 8 inches from the McCormicks' residence. On ser-

vice area maps drawn pursuant to the Retail Electric Supplier Unincorporated Area Certified Territory Act (Act)[1], the McCormicks' property is bisected by the division line between the West Penn and Central service areas, with the McCormicks' residence located within Central's service area.[2] Because West Penn had a right-of-way across the rear of the McCormicks' property, the McCormicks mistakenly applied to West Penn for utility service.

On June 6, 1985, the McCormicks were notified by West Penn that their electric service would be discontinued on June 12, 1985 because of West Penn's discovery of its inadvertent violation of the Act.

On June 12, 1985, the McCormicks filed a complaint with the Commission asking that they be allowed to remain customers of West Penn. After a hearing, an Administrative Law Judge granted the relief requested by the McCormicks. The Commission affirmed, holding that it would be against the public interest to require

---

[1] Act of July 30, 1975, P.L. 113, *as amended*, 15 P.S. §§3277-3287.

[2] We note that the maps used to divide West Penn's service territory from Central's were not yet in existence at the time the McCormicks applied for electric service. This fact, however, does not preclude the operation of the Act, as Section 5(b) of the Act, 15 P.S. §3281(b) provides:

Except as provided in subsections (c) and (e) any new electric-consuming facility located in an unincorporated area which has not as yet been included in a map issued by the commission, pursuant to section 4(c), or certified pursuant to section 4(d), shall be furnished retail electric service by the retail electric supplier which has an existing distribution line in closer proximity to such electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier. Any disputes under subsection (b) shall be resolved by the commission.

the McCormicks to become customers of Central. This appeal followed.[3]

Central Electric contends that the Commission committed an error of law when it allowed West Penn to continue serving the McCormicks, arguing that under the express provisions of the Act, Central was the exclusive supplier to any customer located within its service area. We agree.

The Act is clear that one retail electric supplier may not render retail electric service in the certified territory of another retail electric supplier. Under Section 3 of the Act, 15 P.S. §3279, the legislature manifested this intention as follows:

> It is hereby declared to be in the public interest that . . . the Commonwealth is divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide retail electric service on an *exclusive basis.*

(Emphasis added.) The exclusive right of a retail electric supplier to serve customers within its certified territory is again emphasized in Section 4(a) of the Act, 15 P.S. §3280(a) (dealing with boundaries of certified territories) which states that "[e]xcept as otherwise provided in this section, no retail electric supplier shall furnish retail electric service in the certified territory of another retail electric supplier." Last, Section 5(a), 15 P.S. §43281(a) provides:

> Except as otherwise provided herein, *each retail electric supplier shall . . . be obligated, and*

---

[3] Our scope of review over the Pennsylvania Public Utility Commission is limited to determining whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings of fact are unsupported by substantial evidence. 2 Pa. C. S. §704; *Jackson v. Pennsylvania Public Utility Commission,* 105 Pa. Commonwealth Ct. 37, 522 A.2d 1187 (1987).

*shall have the exclusive right, to furnish retail electric service to all electric-consuming facilities located within its certified territory* and *shall not* furnish, make available, render or extend its retail electric service to a consumer for use in electric-consuming facilities located within the certified territory of another retail electric supplier; . . .

(Emphasis added.)

There are only two situations when the Commission may allow a retail electric supplier to serve a customer located in another retail electric supplier's certified territory. The first is governed by Section 5(c) of the Act, 15 P.S. §3281(c), which reads:

If the commission, after hearing, shall determine that the retail electric service being furnished or proposed to be furnished by a retail electric supplier to an electric-consuming facility is inadequate and is not likely to be made adequate, the commission may authorize another retail electric supplier to furnish retail electric service to such facility.

Indeed, the exclusivity provisions of the Act are more stringent than those imposed upon public utilities by the Public Utility Code (Code), 66 Pa. C. S. §§101-3315 and its predecessor, as the grant of a Certificate of Public Convenience and Necessity under the Code does not necessarily grant a utility the exclusive right to serve a particular geographic area. *See Lukens Steel Co. v. Pennsylvania Public Utility Commission,* 92 Pa. Commonwealth Ct. 530, 533 n. 1, 499 A.2d 1134, 1136 n. 1 (1985).

The second situation is dealt with in Section 4(d) of the Act, 15 P.S. §3280(d). Section 4(d) provides:

In each unincorporated area, where the commission shall determine that the existing lines of two

or more retail electric suppliers are too intertwined or located that subsection (b) cannot reasonably be applied, the commission shall, after hearing, certify the service territory or territories for the retail electric suppliers so as to promote the legislative policy stated in Section 3.

The Commission in its adjudication in this case relied on neither of these exceptions. Instead, it merely held that making the McCormicks become customers of Central was not in the public interest under Section 3 of the Act. While this Court has previously recognized Section 3 as a clear statement of the legislative will, *Penn United Technology, Inc. v. Pennsylvania Public Utility Commission*, 49 Pa. Commonwealth Ct. 182, 410 A.2d 948 (1980), and has utilized it as a guide to construing ambiguous provisions of the Act, *Pennsylvania Rural Electric Association v. Pennsylvania Public Utility Commission*, 81 Pa. Commonwealth Ct. 466, 473 A.2d 1134 (1984), Section 3 has never been held by any court to be substantive law. The provisions of the Act dealing with the exclusivity of the service territories of retail electric suppliers are explicit, and an administrative agency may not disregard the unambiguous text of controlling statutes under the guise of pursuing the statute's spirit. *Shestack v. General Braddock Area School District*, 63 Pa. Commonwealth Ct. 204, 437 A.2d 1059 (1981). In ignoring the provisions of the Act, the Commission committed an error of law.

Reversed.

## ORDER

Now, November 20, 1987, the order of the Pennsylvania Public Utility Commission, No. C-850282, dated October 23, 1986, is hereby reversed.