568 A.2d 306

**UNITED ELECTRIC COOPERATIVE, INC., and Pennsylvania Rural Electric Association, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Jan. 8, 1990.

D. Mark Thomas, with him, Anthony C. Adonizio, William E. Mowatt and Karen Frymiare Clark, for petitioners.

Donna Stanek Zehner, Asst. Counsel, with her, Frank B. Wilmarth, Deputy Chief Counsel, and John Povilaitis, Chief Counsel, for respondent.

H. John Drayer, with him, Alan Michael Seltzer, Pope, Pope and Drayer, for intervenor, William I. Reitz, Sr.

Before CRAIG and BARRY, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

United Electric Cooperative, Inc. (UNILEC) and the Pennsylvania Rural Electric Association (PREA) appeal from an order of the Pennsylvania Public Utility Commission (PUC) affirming a decision of an Administrative Law Judge which held that a garage and storage facility owned by William Reitz is not a separate electric-consuming facility and that Pennsylvania Electric Company (PENELEC) is the proper retail electric supplier.

In 1979, Reitz purchased a house which is located on the northern side of a highway. Electrical service for the residence and its four adjacent garages is provided by PENELEC. In 1984, Reitz purchased 32 acres of land on the southern side of the same highway on which he constructed a garage and storage facility. The facility, which has three separate heating systems, is used to store approximately twelve antique automobiles and racing cars. The garage and storage facility is approximately 170 feet from the house.

In June, 1986, Reitz applied to UNILEC for electric service to the garage and storage facility. UNILEC provided service from July 1, 1986 until July 23, 1987, when, at the request of Reitz, UNILEC disconnected service.

On June 3, 1987, Reitz applied to PENELEC for additional service for a mobilehome. PENELEC provided 200 amp pole service on June 18, 1987. The pole service is located 30

feet from the Reitz residence. Subsequently, Reitz purchased a house for his son, and the mobilehome was never installed.

Reitz, deciding to keep the pole service, extended a secondary electric service line across the highway connecting the garage and storage facility to the pole service. Additionally, Reitz uses the pole service to provide power to the northern side of the highway for a Christmas display, an outdoor light, and a mobilehome used a couple of weeks a year.

PENELEC sends two bills to Reitz every month. One bill is for service to the Reitz residence, which is computed at the residential service rate. The other bill is for pole service which is computed at the general service rate. The general service rate is used because the power equipment used in the garage and storage facility exceeds 2,000 watts.

On July 24, 1987, UNILEC and PREA filed a complaint with the PUC against Reitz and PENELEC, alleging that, under the Retail Electric Supplier Unincorporated Area Certified Territory Act, Act of July 30, 1975, P.L. 113, *as amended*, 15 P.S. §§ 3277 to 3287, UNILEC has the exclusive right to furnish electric service to Reitz' garage and storage facility. The administrative law judge concluded that PENELEC is the proper retail electric supplier because the garage and storage facility, along with the residence, constitute a single electric-consuming facility which is within the certified territory of PENELEC. The PUC affirmed the decision and this appeal followed.

There is no dispute that UNILEC's secondary distribution line is closer to the garage and storage facility than is the PENELEC distribution line, and that PENELEC's distribution line is closer to the Reitz residence than is the UNILEC line. Section 5 of the Act, 15 P.S. § 3281(b), provides that retail electric service shall be provided by the retail electric supplier whose existing distribution line is in closer proximity to the electric-consuming facility. The Act defines an electric consuming facility as "everything that utilizes electric energy from a central station source," 15 P.S. § 3278.

Therefore, the pivotal issue in this case is whether Reitz' garage and storage facility, south of the highway, constitutes an electric-consuming facility separate from the mobilehome and residence service of PENELEC north of the highway.

In *Pennsylvania Rural Electric Assoc. v. Pennsylvania Public Utility Commission*, 81 Pa.Commonwealth Ct. 466, 473 A.2d 1134 (1984), this court held that a department store, located inside a mall, did not constitute a separate electric-consuming facility. In affirming the commission's decision, the court noted that the mall had a single roof, and all tenants had access to the common areas of the mall. "More importantly, the commission believed that holding Hill's to be a separate facility would lead to results which would be contrary to the legislatively declared purpose of the Act." *Pennsylvania Rural Electric Assoc.*, 81 Pa. Commonwealth Ct. at 471, 473 A.2d at 1137.

Section 3 of the Act, 15 P.S. § 3279, provides:

It is hereby declared to be in the public interest that, to encourage the orderly development of retail electric service in unincorporated areas, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the Commonwealth of Pennsylvania, to prevent the waste of materials and natural resources, to minimize inconvenience, diminished efficiency and higher costs in serving the consumer, and otherwise for the public convenience and necessity, the Commonwealth is divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide retail electric service on an exclusive basis.

When construction of the mall began, PENELEC installed an underground cable. Because the cable encircles the mall and is capable of serving the entire mall, the court agreed with the commission that, if the individual store located within the complex was deemed a separate facility, duplication of electric facilities would result, contrary to the Act's stated purpose.

In this case, the PUC held that requiring Reitz to obtain electric service from two suppliers based solely on the distance between the structures and the existing distribution lines would be contrary to and inconsistent with the public interest, convenience and necessity. We disagree.

The purpose of the Act is to serve public as well as private interests. The Act encourages the orderly development of retail electric service in rural areas. However, this goal is defeated when individuals are permitted to erect secondary electric service lines to obtain electric service from the retail supplier of their choice. Another express goal of the statute is to avoid the unnecessary encumbering of the landscape by electrical lines.

We believe that, in keeping with the legislatively declared purpose of the Act, the Reitz garage and storage facility constitutes a single electric-consuming facility in itself. Therefore, because the garage and storage facility is closest to UNILEC's distribution line, UNILEC has the exclusive right to furnish retail electric service to the facility.

Accordingly, we reverse.

## ORDER

NOW, January 8, 1990, the order of the Pennsylvania Public Utility Commission, No. C–871423, dated March 9, 1989, is reversed.

BARBIERI, Senior Judge, dissenting.

I respectfully dissent. As the majority has stated, the outcome here turns on whether Reitz' garage and storage facility constitutes a separate "electric consuming facility" for purposes of the Retail Electric Supplier Unincorporated Area Certified Territory Act (Act), or whether these structures are part of a larger "electric consuming facility" which includes the Reitz residence and additional garage structures. In my view, the administrative law judge and

the Commission reached the correct result in determining that, based on the facts presented here, the residence and other structures comprise a single electric consuming facility.

Admittedly this is a close question, and there are factors which weigh in favor of the conclusion reached by the majority. However, I concur in the reasoning of the administrative law judge, expressly approved by the Commission, that treating all of Reitz' property as a single electric consuming facility is consistent with the policy expressed in Section 3 of the Act, 15 P.S. § 3279.

> Where the property of a single consumer, containing his residence and multiple adjacent structures, is crossed by the existing distribution lines of two or more retail electric suppliers, it would be contrary to and inconsistent with "... the public interest, ... convenience and necessity ..." to require that consumer to obtain retail electric service from more than one supplier based solely on the distance between each structure and the existing distribution lines.

Administrative Law Judge's decision, p. 47.

Moreover, I believe that the determinations of the administrative law judge and the Commission are more consistent with the decision of this Court in *Pennsylvania Rural Electric Assoc. v. Pennsylvania Public Utility Commission*, 81 Pa.Commonwealth Ct. 466, 473 A.2d 1134 (1984), than is the position advanced by the majority here.