**·Carol & Don HELLER, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 31, 1997.

Decided March 10, 1998.

Publication Ordered May 15, 1998.

Carol and Don Heller, petitioners, pro se.

Kathryn G. Sophy, Bohdan R. Pankiw, and John F. Povilaitis, Harrisburg, for respondent.

Patricia Armstrong, Harrisburg, for intervenor, Central Electric Cooperative.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

SMITH, Judge.

Petitioners Carol and Don Heller petition for review of an order of the Pennsylvania Public Utility Commission (PUC) that dismissed their complaint requesting that the PUC order electric service to their residence from West Penn Power Company (West Penn) instead of from their current supplier Central Electric Cooperative (Central). This Court is called upon to determine which supplier is entitled to provide service to Petitioners' residence pursuant to the Unincorporated Area Certified Territory Act of 1990 (Territory Act), 15 Pa.C.S. §§ 7301, 7351–7359, repealed in part by Section 7410(b) of the Electricity Generation Choice for Customers of Electric Cooperatives Act, 15 Pa. C.S. § 7410(b). The Territory Act governs boundary disputes involving service territories of a public utility and rural electric cooperatives.

Petitioners purchased their residence in Chicora, Butler County, Pennsylvania in 1994. Their residence is an electric-consuming facility, i.e., anything utilizing electric energy from a central station source. Section 7352 of the Territory Act. In late 1995 Petitioners filed their complaint with the PUC requesting electric service from West Penn, asserting that their residence is within West Penn's right of service but that they were not given the option of receiving service from West Penn because Central was serving, and had served, that residence before Petitioners purchased it. West Penn denied that Petitioners' residence is within its service territory but indicated that it could provide service to Petitioners if Central agreed. Central, on the other hand, asserted that Petitioners are in its service territory and that Central has an exclusive right to serve Petitioners' residence. These arguments are grounded in the language of Section 7355(a) of the Territory Act, which provides that each supplier "shall be obligated ... and shall have the exclusive right to furnish retail electric service to all electric-consuming facilities located within its certified territory...."

As the parties' arguments raised territorial issues and the instant territory had not been certified pursuant to the Territory Act, the Administrative Law Judge (ALJ) charged with deciding this case examined a territory map in order to identify the existing distribution lines of West Penn and Central in rela-

tion to Petitioners' residence. An "existing distribution line" is defined in Section 7352 as an "electric line of a design voltage of 35 kV ... or less which on July 30, 1975 ... was or had been used for retail electric service."

■ The ALJ heard this case in late 1996 and issued a decision in February 1997. His decision noted that the distribution lines relied upon by Central in an effort to demonstrate the application of the Territory Act's "closer proximity rule" were incorrect.[1] The ALJ based his decision on the Territory Act's definition of an existing distribution line, which he decided did not include a "service drop."[2] As a result he determined that Petitioners' residence is in closer proximity to West Penn's distribution line so that their residence is within West Penn's exclusive right of service. He also concluded that Central did not meet its burden of proof with respect to the "grandfather clause" affirmative defense, which provides that no supplier shall make available electric service to any electric-consuming facility to which service is being provided by another supplier on July 30, 1975. *See* Section 7355(d). Exceptions were filed thereto by Central; Petitioners and West Penn filed reply exceptions.

By order entered May 27, 1997 the PUC reversed the ALJ's decision and dismissed Petitioners' complaint, holding that Central is the appropriate supplier of electricity to Petitioners' residence. The PUC's decision was based on its own findings of fact and credibility determinations from which it concluded that Central had met its burden with respect to the grandfather clause, and there-

fore it was not necessary to consider the closer proximity rule. Petitioners filed a motion for reconsideration that was denied by the PUC. This pro se appeal followed, and Central was granted leave to intervene.

■ This Court's review of the PUC's decision is limited to a determination of whether the findings are supported by substantial evidence or whether there has been an error of law or a constitutional violation; where the findings are supported by the record, this Court may not make an independent judgment or reweigh the evidence. *Yellow Cab Co. of Pittsburgh v. Pennsylvania Public Utility Commission,* 673 A.2d 1015 (Pa. Cmwlth.1996). Restated, the PUC is the ultimate fact finder in these matters, and its credibility determinations are beyond this Court's review on appeal. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 155 Pa.Cmwlth. 537, 625 A.2d 741 (1993).

■ The parties' arguments on appeal remain much the same as before and revolve primarily around two specific sections of the Territory Act. Petitioners' case is dependent upon the application of the closer proximity rule as provided for by Section 7355(b), which, as noted, addresses *new* electric-consuming facilities and service to such facilities.[3] Specifically, Petitioners argue that West Penn's distribution lines are closer in proximity to their residence than Central's so that West Penn should be Petitioners' electric supplier. Central counters this argument by raising the grandfather clause. As such, the key to the analysis in this case is to

---

**1.** Section 7355(b) of the Territory Act provides that "any new electric-consuming facility located in an unincorporated area which has not as yet been included in a map issued by the [PUC] ... shall be furnished retail electric service by the retail electric supplier which has an existing distribution line in closer proximity to the electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier."

**2.** A "service drop" is not defined in the Territory Act. However, based on the record and existing case law, *see e.g. West Penn Power Co. v. Pennsylvania Public Utility Commission,* 57 Pa.Cmwlth. 148, 422 A.2d 230 (1980), *confirmed,* 57 Pa. Cmwlth. 148, 426 A.2d 1312 (1981) (en banc), this Court concludes that a "service drop" is a 120/240 V line used for residential service. This

definition clearly qualifies a "service drop" as an existing distribution line.

**3.** Residences that were not in existence as of January 30, 1975 "constitute new electric-consuming facilities within the meaning of Section 5(b) of [the Retail Electric Supplier Unincorporated Area Certified Territory Act, Act of July 30, 1975, P.L. 113, *as amended, formerly* 15 P.S. § 3281(b), repealed by Section 401(a) of the GAA Amendments Act of 1990, Act of December 19, 1990, P.L. 834, 15 P.S. § 21401(a)]...." *Valley Rural Electric Cooperative v. Pennsylvania Public Utility Commission,* 143 Pa.Cmwlth. 131, 598 A.2d 627, 630 (1991). A provision similar to former 15 P.S. § 3281(b) is now found in the Territory Act.

This definition, although based on a repealed statute, applies in the instant case by virtue of the

determine whether Petitioners' residence is old or new as that will resolve which section of the Territory Act applies.

Instantly, this Court must affirm the PUC's decision that Petitioners' residence is an old one based on its finding that the residence was provided electric service by Central on, and prior to, July 30, 1975.[4] The ALJ and PUC have acknowledged that the evidence the parties rely on is based on documents more than twenty years old, crafted for purposes other than the application of an act which did not exist at that time. Those documents included, among others, a 1962 map of Central's system identifying an account for the subject property, evidence that Central ran electric service to the yard light on the property beginning in 1969 and evidence showing that Central maintained an electric line servicing the property. Nonetheless, the PUC as fact finder found the evidence sufficient to reach the conclusion that the grandfather clause applies in this case and that Central met its burden with respect thereto.[5]

Petitioners have cited *Somerset Rural Electric Cooperative Inc. v. Pennsylvania Public Utility Commission,* 696 A.2d 251 (Pa.Cmwlth.1997), for the erroneous proposition that the grandfather clause has been overturned. That clause has not been overturned. This Court simply concluded that the closer proximity rule applied to the facts of *Somerset,* where the PUC found that the planned complex was a new electric-consuming facility and therefore different from the previously abandoned electric-consuming facility at the same site and that Somerset's nearest existing distribution line was in closer proximity to the center of the complex than that of the supplier providing retail electric service since 1973. Also, with respect to the applicability of the closer proximity rule, the PUC correctly stated that "[b]ecause the grandfather clause of Section 7355(d) of the Territory Act does apply, [Petitioners'] residence [is not] considered to be a new electric-consuming facility. Accordingly, the closer proximity rule of Section 7355(b) [need not] be applied." The decision of the PUC is affirmed.

### ORDER

AND NOW, this 10th day of March, 1998, the order of the Pennsylvania Public Utility Commission is affirmed.

---

similarities between the current legislation and the repealed legislation. As stated by the PUC in its May 27, 1997 order dismissing Petitioners' complaint:

> [The Territory Act] . . . substantially reenacted . . . the Retail Electric Supplier Unincorporated Area Certified Territory Act, Act of July 30, 1975, P.L. 113, *as amended,* 15 P.S. §§ 3277–3287 (Act 57). Owing to the similarity between Section 7354 of the Territory Act and Section 4 of Act 57 and between Section 7355 of the Territory Act and Section 5 of Act 57, appellate court and [PUC] rulings based on Sections 4 and 5 of Act 57 are reliable precedent for the application of Sections 7354 and 7355 of the Territory Act. *See* Sections 1961 and 1962 of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1961–1962 (when a statute substantially reenacts a repealed statute, the provisions common to both statutes date from their first adoption).

*Id.,* p. 6, n5.

4. Petitioners have attempted to make an issue of the interchangeable references to their "property" and "residence" made by the PUC, their point being that any reference to the word property is irrelevant here as property does not con-

sume energy. This Court concludes that the PUC in referring to property meant all old electric-consuming facilities located thereon, e.g., the residence and yard light. As indicated in *Somerset Rural Electric Cooperative Inc. v. Pennsylvania Public Utility Commission,* 696 A.2d 251 (Pa. Cmwlth.1997), this conclusion would be in line with the purposes of the Territory Act such as "avoid[ing] wasteful duplication of distribution facilities" and "prevent[ing] the waste of materials and natural resources." *See* 15 Pa.C.S. § 7353. As for new electric-consuming facilities on Petitioners' property, the only one mentioned in this case is a proposed greenhouse. This Court agrees with Central and the PUC that to address the greenhouse at this point would be to issue an advisory opinion which will not be done.

5. Assuming *arguendo* that the clause does not apply or that proof thereof was insufficient, this case could still be decided on the closer proximity rule. The ALJ erred in his conclusion that service drops do not equate with distribution lines. Consequently, it is logical to conclude that the opposite of the ALJ's decision would be true, i.e., Central's distribution lines (including the service drops) are in closer proximity to Petitioners' residence.