Penn United Technology, Inc., Petitioner *v.* Pennsylvania Public Utility Commission and Central Electric Cooperative, Inc., Respondents.

Argued November 14, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer and Rogers. Judges Blatt, DiSalle, Craig and MacPhail did not participate.

*Frank P. Krizner* of *McCandless & Krizner,* for petitoner.

*Allison K. Turner,* Assistant Counsel, with her *Shirley Rae Don,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for Pennsylvania Public Utility Commission, respondent.

*Miles R. Lynn, Jr.,* for Central Electric Cooperative, Inc., respondent.

OPINION BY JUDGE CRUMLISH, JR., February 4, 1980:

Penn United Technology, Inc. (Penn United) appeals from an order of the Pennsylvania Public Utility Commission (Commission) dismissing its complaint against Central Electric Cooperative, Inc. We affirm.

Penn United, a tool and dye manufacturer, is constructing an additional facility and wants to have its electric power furnished by West Penn Power Company, which services its existing facility. It refuses to accept its electricity requirements from the Central Electric Cooperative, Inc., which it believes will give less reliable service than West Penn Power.

Penn United argues first that as a private, for-profit business corporation, it is ineligible for membership in an electric cooperative under the Electric Cooperative Corporation Act (Cooperative Act).[1] We agree with the Administrative Law Judge that a liberal construction of the Cooperative Act mandated under Section 36 of that Act, 15 P.S. §12436, does not restrict membership in the Central Electric Cooperative solely to cooperative corporations, but dictates that business corporations for profit are also eligible for membership. Such an interpretation furthers the stated intent of the Cooperative Act which is to facilitate the electrification of rural areas in the Commonwealth not receiving central station service. Penn

---

[1] Act of June 21, 1937, P.L. 1969, *as amended,* 15 P.S. §12401 et seq.

United's narrow interpretation of the membership requirements would thwart this legislative intent by permitting individual consumer preferences to dictate which electric supplier will furnish its needs.

In a related argument, Penn United argues that the Retail Electric Supplier Unincorporated Area Certified Territory Act[2] (Territory Act), which establishes service territories for the various retail electric suppliers in the state, conditions the duty to supply electric service upon receipt of a proper application which Penn United has not filed. The provision to which Penn United refers is Section 5(a) of the Territory Act, 15 P.S. §3281(a), which reads in pertinent part as follows:

[E]ach retail electric supplier shall (*upon receipt of an application for such service* in accordance with such supplier's tariffs, rules or regulations, or bylaws) be obligated, and shall have the exclusive right, to furnish retail electric service to all electric-consuming facilities located within its certified territory. . . . (Emphasis added.)

Penn United would have us interpret the parenthetical language to allow it the right as a consumer not to apply for service from a particular retail electric supplier, and instead, to choose the services of another supplier where feasible. This interpretation undermines the clear legislative purpose of the Territory. Act as set forth in Section 3, 15 P.S. §3279:

It is hereby declared to be in the public interest that, to encourage the orderly development of retail electric service in unincorporated areas, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the Commonwealth of Pennsyl-

---

[2] Act of July 30, 1975, P.L. 113, 15 P.S. §3277 et seq.

vania, to prevent the waste of materials and natural resources, to minimize inconvenience, diminished efficiency and higher costs in serving the consumer, and otherwise for the public convenience and necessity, the Commonwealth is divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide retail electric service on an exclusive basis.

The Territory Act seeks to serve the "public convenience and necessity" by avoiding the wasteful duplication of effort in the furnishing of retail electric service. Implicitly, the Territory Act gives preference to the interests of the public in general over the preference of a particular electric consumer to have a certain supplier furnish it with electricity. The filing of an application and the $15.00 refundable membership fee does not give an individual consumer the right to select its supplier; rather, it allows the supplier a method of obtaining compliance with its regulations. The application procedure is rationally related to serving the public convenience and necessity by promoting the orderly development of electric transmission lines. Penn United's argument that a holding requiring it to join Central Electric Cooperative would infringe upon its constitutional right to assemble is incredible and is dismissed without further comment. We therefore affirm the Administrative Law Judge, whose decision was adopted by the Commission, that the Territory Act requires Penn United, as retail electric consumer, to make proper application to the retail electric supplier within whose certified territory it is located and that it must accept that supplier's service.

Penn United next contests the Commission's finding that its new facility is located within the certified territory served by Central Electric Cooperative. Since no mapping of territories nor certification has

taken place, the Commission is guided by Section 5(b) of the Territory Act, 15 P.S. §3281(b), which states:

> Except as provided in subsections (c) and (e) any new electric-consuming facility located in an unincorporated area which has not as yet been included in a map issued by the commission . . . shall be furnished retail electric service by the retail electric supplier which has an *existing distribution line in closer proximity to such electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier.* Any dispute under this subsection (b) shall be resolved by the commission. (Emphasis added.)

In applying this statutory direction, we must defer to the administrative expertise of the Commission staff. It is not for this Court to exercise independent judgment or resolve conflicting evidence as to which electric supplier has an existing distribution line closer to Penn United's new facility. Our inquiry is directed solely to whether there is substantial evidence to support the Commission's action. *Monongahela Connecting Railroad Co. v. Pennsylvania Public Utility Commission,* 45 Pa. Commonwealth Ct. 164, 404 A.2d 1376 (1979). We have carefully reviewed the testimony and the 20-page appendix to the Administrative Law Judge's initial decision detailing the equidistant line analysis calculations used to determine which supplier's distribution line is in closer proximity to the new facility, and we hold that there was substantial evidence upon which the Commission could have concluded, as it did, that Central Electric Cooperative should be certified to serve the new facility.

Penn United alternatively argues that it falls within an exception to the general rule that each retail electric supplier has the exclusive right and obligation to furnish retail electric service to consumers located

within its certified territory. *See* Section 5(a) of the Territory Act. That exception is found in Section 5(c) of the Territory Act, 15 P.S. §3281(c), and provides that an electric consumer can obtain retail electric service from an electric supplier serving a certified territory other than the one in which its facilities are located if the Commission determines, after hearing, that the retail electric service currently being furnished or proposed to be furnished is inadequate and not likely to be made adequate. The gravamen of this argument focuses on Penn United's attempt to show that it will receive less than adequate service from Central Electric Cooperative in that its voltage is irregular, that its network of electric distribution lines is less reliable than the system utilized by West Penn Power, that many power outages occurred during the winter of 1977, and that its maintenance facilities are farther away from Penn United's new facility than are those operated by West Penn Power. In each instance of alleged inadequacy, Penn United draws a comparison with another retail electric supplier, West Penn Power Company, and points to the latter's alleged superiority. Central Electric Cooperative presented conflicting evidence to rebut each of the alleged inadequacies except for the location of the maintenance facilities. In this regard, Central Electric points to the irrelevance of maintenance facilities during working hours since it may well have a repair crew closer to the breakdown. In any event, we agree with the Commission's ruling that merely demonstrating relative superiority of another supplier's maintenance facilities falls short of establishing absolute inadequacy of service required under the Act. The comparative superiority of one supplier over another, whether, perceived or actual, is not a basis upon which the Commission could justify service by an adjoining supplier which has more distant distribution lines. That

Penn United has failed in its burden of proving Central Electric Cooperative Service will be inadequate is amply supported in the record.

In summary, we hold that the Commission made a fair determination under the Territory Act that the new facility of Penn United is within the certified territory of Central Electric Cooperative which is fully capable of providing the requisite electrical service.

Accordingly, we

### ORDER

AND Now, this 4th day of February, 1980, the order of the Pennsylvania Public Utility Commission entered September 22, 1978, at Docket No. C22531 is hereby affirmed.

Judge DISALLE did not participate in the decision in this case.