628 A.2d 468

**GLADE PARK EAST HOME OWNERS
ASSOCIATION, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 31, 1993.

Decided June 28, 1993.

Daniel P. Delaney, for petitioner.

Terrance J. Buda, for respondent.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

CRAIG, President Judge.

Glade Park East Home Owners Association appeals an order of the Pennsylvania Public Utility Commission that affirmed a decision by an administrative law judge, denying Glade Park's petition for interim emergency order, through which Glade Park sought injunctive relief that would delay the operation of a commission order that directed a change in the supplier of electricity to homes in the Glade Park community.

Glade Park raises the following issues on appeal: (1) whether the commission erred by holding that the administrative law judge did not impair or disregard Glade Park's property interests by denying the petition; (2) whether the commission's finding that Glade Park will not suffer irreparable injury is supported by substantial evidence; and (3) whether the commission violated Glade Park's due process and equal protection rights under the United States and Pennsylvania Constitutions by applying the Retail Electric Supplier Unincorporated Area Certified Territory Act, (Territory Act), Act of July 30, 1975, P.L. 113, 15 P.S. §§ 3277–3287, repealed by the Electric Cooperative Law of 1990, and the Unincorporated Area Certified Territory Law of 1990, Act of December 19, 1990, P.L. 834, 15 Pa.C.S.A. §§ 7301–7359.

## FACTS AND PROCEDURAL HISTORY

On January 24, 1986, Central Electric Cooperative, Inc. (Central Electric), filed a petition for a declaratory order with the commission, requesting that West Penn Power Company (West Penn) cease and desist supplying electric service to certain condominium units in the Glade Park East Condominium Development. The Glade Park development consists of

thirteen condominium units. However, only an area consisting of four of those units is the subject of this case.

In its petition, Central Electric alleged that it had exclusive control, under the Territory Act, to provide electric service to the four units in that area. The commission denied Central Electric's petition, without prejudice.

On May 30, 1986, Central Electric filed a formal complaint with the commission against West Penn, alleging that West Penn was in violation of the Territory Act by providing electric services to the units in Glade Park, and seeking a cease and desist order from the commission.

Section 3 of the Act, 15 P.S. § 3279, stated:

It is hereby declared to be in the public interest that, to encourage the orderly development of retail electric service in unincorporated areas, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the Commonwealth of Pennsylvania, to prevent the waste of materials and natural resources, to minimize inconvenience, diminished efficiency and higher costs in serving the consumer, and otherwise for the public convenience and necessity, the Commonwealth is *divided into geographical areas,* establishing the unincorporated areas within which each retail electric supplier is to provide retail electric service on *an exclusive basis.*

(Emphasis added.)

Section 2 of the Act, 15 P.S. § 3278, defines an "unincorporated area" as a geographical area located outside the corporate limits of cities and boroughs.

Under section 5(b) of the Act, 15 P.S. § 3281(b), electric-consuming facilities which are located in unincorporated areas not included on a map which the commission issued, or which are uncertified [1]:

1. Section 2 of the Act defines "certified territory" as an unincorporated area as certified by the commission, pursuant to section 4(d) of the Act, 15 P.S. § 3280(d), which states in relevant part that:

In each unincorporated area, where the commission shall determine that the existing distribution lines of two or more retail electric

shall be furnished retail electric service by the retail electric supplier which has an existing distribution line in closer proximity to such electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier. Any disputes under this subsection (b) shall be resolved by the commission.

The commission found that the four Glade Park units are located in an unincorporated area that the commission has not included on a map issued by the commission, and that Central Electric had the *exclusive right*, under the Territory Act, to provide electric service to those units.

None of the parties in that dispute filed exceptions to that decision, and the commission issued a final order on March 2, 1989, which directed Central Electric to supply electric service to the units in Glade Park within ninety days.

Glade Park, which was not a party to that litigation, did not appeal the commission's final order, but filed a letter-petition for rehearing with the commission, alleging that Central Electric had violated the Territory Act by not providing notice of its complaint to the individual customers in the Glade Park units. By order dated July 7, 1989, the commission, concluding that the Act did not require such notice, denied the letter-petition.

On June 5, 1989, Central Electric filed a petition with the commission, requesting additional time beyond the commission-directed ninety-day time period, to comply with the commission's March 2 order to supply electric service. The commission has not yet responded to that request.

Glade Park and individual homeowners of the Glade Park units, filed a civil rights action in the United States District Court for the Western District of Pennsylvania, against the commission, Central Electric, and West Penn, alleging viola-

suppliers are so intertwined or located that subsection (b) cannot reasonably be applied, the commission shall, after hearing, certify the service territory or territories for the retail electric suppliers so as to promote the legislative policy stated in section 3.

tions of the parties' due process rights under the Fourteenth Amendment of the United States Constitution.

The court concluded that Glade Park did not have a constitutionally protected property right as to receiving electric service, and that Central Electric did not act under "color of state law" in obtaining an order from the commission. The court granted the commission's motion to dismiss, and reserved the issues of adequacy of Central Electric's electric service, facilities and rates, for the commission to determine.[2]

The parties appealed the District Court's decision to the United States Court of Appeals, which affirmed that decision.[3]

On October 7, 1991, Glade Park filed its petition for interim emergency relief, seeking to stay the effect of the commission's March 2, 1989 order, pending the commission's resolution of Glade Park's request that the commission declare that its March 2 order, directing Central Electric to provide electric service to the four Glade Park units, had expired by its terms because Central Electric had failed to supply service within the ninety-day period as directed by the commission.

By final order of June 1, 1992, the commission denied Glade Park's petition, concluding that the right to relief was not clear. The commission's June 1 order is the subject of the Glade Park's present appeal to this court.

The commission filed a motion to quash, or in the alternative, to strike certain objections which Glade Park made to the commission's June 1, 1992 determination denying Glade Park's request for interim emergency relief. This court denied the motion to quash, but granted, in part, portions of the alternate motion to strike certain objections in the appeal petition.

Specifically, this court struck objections (a) and (b) in paragraph 10 of the petition, which involved the issue of whether the commission violated Glade Park's constitutional rights, including (1) Glade Park's right to a reasoned decision

**2.** *Glade Park East Home Owners Association v. Central Electric Cooperative,* No. 91–445 (W.D.Pa., filed October 3, 1991).

**3.** *Glade Park East Home Owners Association v. Central Electric Cooperative,* 961 F.2d 1567 (3d Cir. April 3, 1992).

based upon record evidence and (2) Glade Park's right to notice and a hearing in a proceeding which Glade Park contended would result in a substantial increase in the electric rates of the homeowners in the four Glade Park units. We concluded that the federal courts had decided those issues.

The commission filed an application for correction of order, asking this court to strike an additional objection from the petition. This court denied the application.

This court must now address the remaining matters which Glade Park properly raised in its petition for review.

## ANALYSIS

■ This court's scope of review of an adjudication of the commission is limited to determining whether any constitutional rights were violated, whether an error of law was committed, or whether the findings of fact are supported by substantial evidence. *West Penn Power Company v. Pennsylvania Public Utility Commission*, 57 Pa.Commonwealth Ct. 148, 422 A.2d 230 (1980).

### 1. Issuance of Interim Emergency Order

Glade Park contends that the commission erred in denying its petition for interim emergency relief because Glade Park met all of the elements required for the issuance of interim emergency relief. Glade Park further asserts that the commission erred in relying on the findings it made in its July 7, 1989 order, denying Glade Park's letter-petition seeking a rehearing of the proceedings concerning Central Electric's right to supply electric service to the condominium units in Glade Park, and in not examining the new evidence and law which Glade Park submitted.

52 Pa.Code § 3.1 defines an "emergency" as a "situation which presents clear and present danger to life or property." The commission may issue an interim emergency order only when an administrative law judge finds that *all* of the following elements exist:

(1) The petitioner's right to relief is clear.

(2) The need for relief is immediate.

(3) The injury would be irreparable if relief is not granted.

(4) The relief requested is not injurious to the public interest.

52 Pa.Code § 3.7(a).

### a. The Right to Relief

■ In the present case, Glade Park, in its petition for emergency relief, sought a stay of the commission's March 2, 1989 order disqualifying West Penn as the electric supplier for Glade Park and directing Central Electric to initiate service within ninety days, pending the commission's decision as to whether that order had expired by its terms. In addition, Glade Park requested that, should the commission decide that it would consider a request from Central Electric to extend the ninety-day period in the March 2 order, the commission should re-open the case and allow Glade Park to enter an appearance.

Section 5(a) of the Territory Act, 15 P.S. 3281(a), states in pertinent part:

each retail electric supplier shall (upon receipt of an application for such service in accordance with such supplier's tariffs, rules or regulations, or bylaws) be obligated, and shall have the *exclusive right*, to furnish retail electric service to all electric-consuming facilities located within its certified territory....

(Emphasis added.)

The administrative law judge interpreted the Act to mean that each condominium unit in Glade Park is a separate electric-consuming-facility, and because the four units which are the subject of this dispute are located in the service territory of Central Electric, Central Electric has the exclusive right to provide service to the residents in those units.

The administrative law judge noted that, should the commission re-open the case with Central Electric and permit Glade Park to participate, Glade Park would argue the that the Glade Park community, in its entirety, was *one electric-con-*

*suming-facility*, and that the administrative law judge, in Central Electric's Territory Act case, erred in concluding that the individual condominium units in the unincorporated area should be treated as an area separate and distinct from Glade Park. The administrative law judge concluded that, because the commission had already decided that issue in its March 2 order, denying Glade Park's letter-petition, collateral estoppel precluded Glade Park from relitigating that issue.

Based on his conclusion that the commission had already properly determined that each condominium unit in Glade Park is a separate electric-consuming-facility, the administrative law judge determined that Glade Park's right to relief was not clear and thus Glade Park had not met the first requirement for the granting of an interim emergency relief order.

In affirming the administrative law judge's decision, the commission concluded:

> Concerning the Association's *right to relief,* we have reviewed recent precedent involving Act 57 and find no court or legislative authority which causes us to reach an interpretation contrary to our Orders of March 2, 1989 and July 7, 1989. Consistent with said March 2, 1989 Order, we reiterate that each condominium unit building is a *separate "electric-consuming facility"* and the buildings which are the subject of this dispute are located in the territory of CEC, thereby entitling it to the exclusive right to provide service.
>
> (R. 214a–215a) (Emphasis added.)

Glade Park argues that, because the commission relied on its July 1989 decision, this court should re-examine that decision. However, the commission considered the new evidence, law, and the administrative law judge's findings and relied only in part on its July 1989 decision. The commission concluded that Glade Park's right to relief was not clear because it found no legal basis for an interpretation contrary to the March or July orders in 1989.

Because the commission found that Glade Park's right to relief was not clear, Glade Park did not meet the first require-

ment for the issuance of an interim emergency relief order, and the commission properly denied the requested relief on that basis alone.

### b.  Irreparable injury

Because of its conclusion that Glade Park's right to relief was not clear, the commission did not consider all of the elements required for the issuance of an interim emergency relief.  However, the commission did consider whether Glade Park would suffer irreparable harm from the substitution of an electric supplier, and concluded that there would be no irreparable injury.

Glade Park contends that there would be irreparable injury because: (1) Central Electric's service is more expensive than West Penn's, (2) West Penn's electric rates would have a favorable effect on the market value of the real estate, (3) West Penn's electric service is more reliable than Central Electric's, and (4) the commission regulates West Penn, and could provide customers with relief from adverse utility actions, but Central Electric is not subject to the commission's jurisdiction, and therefore, customers of Central Electric could not seek administrative relief from the commission.

■■  Glade Park presented testimony before the administrative law judge concerning the reduced reliability and increased cost of Central Electric's service.  The administrative law judge did not find that testimony credible and made the following findings:

.        .        .        .        .

10.  The reliability of an electric line is largely dependent on the length of the line and the consequent exposure of the line to the risks of the environment; West Penn's quarter-mile line serving Glade Park East is *less susceptible to outages than is CEC's five mile line* (plus the length of West Penn's line [approximately 11 miles long] that serves CEC's substation) that would likely be used to serve Glade Park East.

11. In the context of the instant proceeding, *comparative reliability* of CEC and West Penn's electric utility service cannot be determined solely from the consideration of the comparative length of the respective suppliers' distribution lines.

12. The record does not demonstrate that West Penn's utility service to the relevant property owners in Glade Park East would likely be more reliable than the utility service that CEC may provide to the property owners.

13. In August 1985 and February 1991, the residential rates of West Penn were higher than the comparable rates of CEC; from 1985 to 1991, at the 1,000 kwhs per month level of residential electric utility service consumption, *West Penn's rates have risen faster than CEC's—$0.02 versus $9.40.*

(Emphasis added.)

The commission independently considered the new evidence, law, and the administrative law judge's findings and determined that (1) Glade Park did not establish that Central Electric's service was inadequate, and (2) the change in electric service would not affect the salability of the condominiums.

In addition, the commission concluded that, regardless of whether West Penn or Central Electric provide electric service to the units, the homeowners would have legal and administrative remedies to obtain reasonable and adequate service. Thus, the commission found that the Glade Park residents would not suffer irreparable injury.

The commission's finding that Central Electric's service was not inadequate, is supported by substantial evidence. That finding provides further support for the commission's denial of Glade Park's petition for interim emergency relief.

2. Claim Preclusion of Issues of Due Process Violations of the Pennsylvania and United States Constitutions

■ Glade Park argues that claim preclusion does not bar this court from re-examining the issues involved in the commission's July 1989 determination of Glade Park's request for

a rehearing of the dispute between Central Electric and West Penn, especially in light of the fact that, in its June 1992 decision, the commission affirmed its conclusions in the July 1989 order.

A final judgment in a prior proceeding operates to preclude a claim *only* where there is an identity of: (1) the subject matter, (2) the cause of action, (3) the parties, and (4) the quality or capacity of the parties suing or being sued. *Evans v. Workmen's Compensation Appeal Board (Dietch Company),* 121 Pa.Commonwealth Ct. 364, 550 A.2d 868 (1988). In addition, claim preclusion applies not only to matters which were actually litigated in a prior proceeding, but also to matters which *should* have been litigated at the first proceeding, if those matters were a part of the same cause of action. *Anderson v. Workmen's Compensation Appeal Board (National Forge Company),* 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988).

In its letter-petition for rehearing, which was the subject of the commission's July 1989 order, Glade Park argued that the commission violated the due process rights of the residents of Glade Park, under the Pennsylvania and United States Constitutions, because the residents were not given notice and an opportunity to be heard in the proceeding between Central Electric and West Penn. Glade Park argued that a taking of property without due process of law had occurred because the commission had ordered a change in the supplier of their electric service, without notice to the residents, which would affect the salability of the residents' properties.

The commission concluded that the sole purpose of the Territory Act was to establish boundaries of certified territory between retail electric suppliers. The commission further concluded that there was no language in the Territory Act which requires the commission, when establishing the boundaries under the Territory Act, to consider the desires of electric customers to have a particular electric supplier. The commission further noted that only retail electric suppliers are required to receive notice of hearings under the Act. *See*

*CEPA v. Philadelphia Water Commission,* 133 Pa.Commonwealth Ct. 148, 575 A.2d 160 (1990); 15 P.S. § 3278.

In the present appeal, Glade Park again raises the issue of whether the commission violated the residents' due process rights by failing to provide the Glade Park residents with notice and an opportunity to be heard. Thus, because there is an identity of subject matter and cause of action, the first two requirements of claim preclusion have been met.

Glade Park argues that, because it was not a party to the territorial dispute between Central Electric and West Penn, claim preclusion cannot bar Glade Park's relitigation of the issues of notice in this appeal. However, Glade Park had an opportunity to present argument on that issue in its letter-petition for rehearing. A hearing or trial proceeding is necessary only to resolve disputed questions of fact and is not required to decide questions of law, policy, or discretion. *See* K.C. Davis, *Administrative Law Treatise,* §§ 12:2, 14:1–14:3 (1979–80). Courts can apply claim or issue preclusion where a party did not have a hearing or trial procedure, but presented legal arguments before an adjudicating body. *Lehigh Valley Power Committee v. Pennsylvania Public Utility Commission,* 128 Pa.Commonwealth Ct. 259, 563 A.2d 548 (1989).

Glade Park presented legal arguments to the commission in its petition, and the commission considered those arguments and decided all of the legal issues. Thus, this court concludes that the last two requirements for claim preclusion are met and Glade Park may not reargue the due process issues which were the subject of the commission's July 7, 1989 order.

3. Property Rights in Reasonable Electric Rates

■ Glade Park argues that, because section 1301 of the Public Utility Code provides that electric rates be just and reasonable, and because Central Electric's rates are higher than West Penn's, the commission ·deprived the Glade Park residents of property interests in their electric rights, which constitutes a taking of property without due process of law.

Glade Park cites Section 1301 of the Public Utility Code, Act of July 1, 1978, P.L. 598, 66 Pa.C.S.A. § 1301, in arguing that

ratepayers have a substantial property interest in receiving just and reasonable electric rates, and the commission deprived the ratepayers of this property interest.

However, the commission did not deprive the customers of any property interest, but merely enforced the boundary line dispute between West Penn and Central Electric, in enforcing the Territory Act. The commission's March, 1989 order *did not set an increase in rates;* that order only enforced the provisions of the Territory Act regarding the establishment of boundaries. The enforcement of the Act resulted in a change in electric suppliers, which may have increased the electric rate, but that change was incidental to enforcement of the Act. As the commission notes, each electric supplier in each boundary under the Act may have different rates. In addition, as noted above, the commission found that, although Central Electric's rates are now higher than West Penn's, West Penn has increased its rates faster than Central Electric.

This court noted in *Penn United Technology Incorporated v. Pennsylvania Public Utility Commission,* 49 Pa.Commonwealth Ct. 182, 410 A.2d 948 (1980), that the intent of the Territory Act is to prevent wasteful duplication of electric service. We noted that:

> Implicitly, the Territory Act gives preference to the interests of the public in general over the preference of a particular electric consumer to have a certain supplier furnish it with electricity ... We therefore affirm the Administrative Law Judge, whose decision was adopted by the Commission, that the Territory Act requires Penn United, as a retail electric consumer, to make proper application to the retail electric supplier within whose certified territory it is located and *that it must accept that supplier's service.*

*Id.* at 186, 410 A.2d at 951. (Emphasis added.)

Accordingly, the decision of the commission is affirmed.

## ORDER

NOW, June 28, 1993, the decision of the Pennsylvania Public Utility Commission, dated June 1, 1992, at C–860802 is affirmed.