In re JUDICIAL SALE, TAX CLAIM BUREAU OF NORTHAMPTON COUNTY, EASTON, PA, Held December 19, 1996.

Property Located At 36 S. 6th Street, Easton, PA Designated As Map L9SE2A Block 20 Lot No. 17.

Appeal of NORTHAMPTON COUNTY TAX CLAIM BUREAU, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.
Decided Nov. 19, 1998.

---

David M. Backenstoe, Easton, for appellant.

Robert Eyer, Easton, and Steven D. Gladstone, Mt. Pocono, for appellees.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

The Tax Claim Bureau of Northampton County (Bureau) appeals from an order of the Court of Common Pleas of Northampton County which ordered the Bureau to refund $10,000, which was the amount of the bid paid to the Bureau for property at a judicial sale which was later declared void.

On December 19, 1996, a judicial sale took place at which property owned by Steven Rivera and Curtis C. Klinger, Jr., and located at 36 S. 6th Street in Easton, Pennsylvania, was sold for delinquent taxes. Joseph and Eile McCloskey purchased the property for the sum of $10,000. In return, they received a deed issued by the Bureau on April 16, 1997, which the McCloskeys subsequently recorded with the Recorder of Deeds in Northampton County in Deed Book Vol-

ume 1997–1, Page 039407. Thereafter the McCloskeys occupied the property and made improvements to it in the amount of $9,685.44.

On May 22, 1997, Rivera and Klinger filed objections and exceptions to the December 19, 1996 judicial sale in the Court of Common Pleas, asserting a lack of proper notice to them of the sale. Phillipsburg National Bank and Trust Company, a lienholder of the property subsequently filed a similar petition. Specifically, Phillipsburg National Bank sought to set aside the sale on the grounds that, as a lienholder, it was entitled to notice of the sale under Section 602 of the Real Estate Tax Sale Law[1] (Law), which it did not receive. Neither the Bureau nor the McCloskeys filed an answer to the petitions, and, on August 8, 1997, the Court entered an order declaring the December 19, 1996 judicial sale void. Following the December 19, 1996 judicial sale, but prior to Common Pleas declaring the sale to be null and void, the Bureau made the following distributions from the $10,000 bid price: (1) $712.20 was paid to the County of Northampton; (2) $1,360.23 was paid to the City of Easton; (3) $2,970.50 was paid to the Easton Area School District; (4) $560 went for costs; (5) $15 went to the auctioneer; (6) $26.50 to the Recorder of Deeds; and (7) $584.04 was paid as realty transfer tax. Therefore, from the original $10,000 bid price, the Bureau had $3,771.53 remaining.

On September 23, 1997, the McCloskeys filed a petition in the Court of Common Pleas seeking to compel the Bureau to refund to them the $10,000 they bid and paid at the tax sale. In addition, the McCloskeys also sought to have Rivera and Klinger pay the $10,000 bid price to the Bureau and further requested an order compelling Rivera and

Klinger to reimburse them for the improvements that they had made to the property while they had occupied it based on the theory of unjust enrichment.[2]

On March 13, 1998, Common Pleas issued an order requiring the Bureau to return the McCloskeys' $10,000 bid price. However, Common Pleas denied all other relief, and this appeal by the Bureau only followed. No issue is presented in this appeal for recovery of the $9,685.44 expended for improvements to the property on grounds of unjust enrichment.

■ On appeal,[3] the Bureau presents three arguments: (1) the McCloskeys' petition was barred by the doctrines of caveat emptor and governmental immunity; (2) Common Pleas abused its discretion by ordering the Bureau to refund monies that had already been dispersed because the sale had been confirmed by the Court; and (3) the McCloskeys' petition was barred by the doctrines of res judicata and collateral estoppel.

■ The Bureau first asserts that the McCloskeys' petition is barred by the doctrines of caveat emptor and governmental immunity. Section 1 of the Act of April 21, 1856, P.L. 477, as amended, 72 P.S. § 5931 provides as follows:

In all public sales of land hereafter made by the treasurer or commissioners of the several counties of this [C]ommonwealth, in pursuance of the laws of this [C]ommonwealth the rule of caveat emptor shall apply, except in cases of double assessment, or where the taxes on which the sale is made shall have been previously paid, or where the lands do not lie within the county; and neither said treasurer nor commissioners shall be required to refund the

1. Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. § 5860.602.

2. The Superior Court set out the elements that a party must demonstrate for unjust enrichment in Wolf v. Wolf, 356 Pa.Super. 365, 514 A.2d 901 (Pa.Super.1986), overruled on other grounds, Van Buskirk v. Van Buskirk, 527 Pa. 218, 590 A.2d 4 (1991). The elements are:
[(1)] benefits conferred on defendant by plaintiff, [(2)] appreciation of such benefits by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that

it would be inequitable for defendant to retain the benefit without payment for value.
Id. at 905–06, 514 A.2d 901.

3. Our standard of review in a tax sale case is limited to determining whether the Lower Court abused its discretion, rendered a decision without supporting evidence or clearly erred as a matter of law. Casaday v. Clearfield County Tax Claim Bureau, 156 Pa.Cmwlth. 317, 627 A.2d 257 (Pa.Cmwlth.1993).

purchase money, costs or taxes paid upon any tract or tracts of land **so sold as aforesaid.**

72 P.S. § 5931 (emphasis added). This Court has concluded that the doctrine of caveat emptor, or "let the buyer beware," applies to judicial sales. *Frey v. Beaver County Tax Claim Bureau,* 687 A.2d 57 (Pa. Cmwlth.1996).[4] Based upon this doctrine, the Bureau argues that the McCloskeys were not entitled to the refund of their bid price. Specifically, the Bureau argues that, under caveat emptor, the McCloskeys took certain risks in attempting to purchase the property at a judicial sale, one of which, according to the Bureau, was the risk that the sale would subsequently be set aside. We disagree. Although the law is clear that the doctrine applies to a purchaser at a judicial sale, the prerequisite for the maxim "let the buyer beware" is that there is, in fact, a buyer. In the present case, Common Pleas' August 8, 1997 order setting aside the judicial sale declared the sale to be null and void. It is, of course, an elementary principle of law that when an event or act is voided, the event or act is treated as if it never occurred or existed. *Blackwell v. State Ethics Commission,* 130 Pa.Cmwlth. 646, 569 A.2d 378 (Pa. Cmwlth.1990), *aff'd,* 527 Pa. 172, 589 A.2d 1094 (1991). Therefore, because the sale never existed as the result of Common Pleas' order, there was no buyer for the property because there was no sale. Thus, the doctrine of caveat emptor cannot apply because the McCloskeys never purchased the property.

■ Likewise, the doctrine of governmental immunity does not apply in the present case. The Bureau asserts that under our Supreme Court's holding in *In re Upset Sale (Skibo Property),* 522 Pa. 230, 560 A.2d 1388 (1989), it is immune from the McCloskeys' petition. In *Skibo,* the Court concluded that, although a disappointed purchaser was enti-

tled to any interest which accrued on the bid price while the Tax Claim Unit held the funds, the purchaser could not sue the Tax Claim Unit for interest on the money that the purchaser borrowed to purchase the property because such a suit is barred by governmental immunity. In its analysis, however, the Supreme Court did not address the issue of the return of the bid price to the disappointed purchaser. As this Court noted in its opinion in *Skibo,*[5] **the Tax Claim Unit had already returned the purchase money to the disappointed purchaser,** and, therefore, those funds were not in dispute.

Moreover, we do not agree with the Bureau that *Skibo* stands for the proposition that a disappointed taxpayer is only entitled to the interest which accrues on the monies paid for property at a judicial sale; rather we read *Skibo* to provide for a full refund of the purchase price **in addition to** accrued interest on that sum. *See McCulloch et al. v. District of Columbia,* 685 A.2d 399 (D.C. 1996). Accordingly, the Bureau's reliance on *Skibo* as support for its decision to keep the McCloskeys' bid price is misplaced, and our research has revealed no other case which would support the Bureau's argument.

■ Next, the Bureau argues that Common Pleas abused its discretion by requiring it to refund the McCloskeys' money where the tax sale had previously been confirmed, and the County had dispersed the money. At the outset, we note that the effect of confirmation is contained in Section 607(g) of the Law, 72 P.S. § 5860.607(g), which provides in pertinent part as follows:

> If no objections or exceptions are filed or if objections or exceptions are finally overruled and the sale confirmed absolutely, ... the proceedings of the bureau with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, by a grantee or

---

4. In *Frey,* a purchaser of property at a tax sale sought to have his purchase price refunded after he learned that the property was adjacent to property which had been condemned and closed due to a defective on-site sewage system. This Court affirmed the decision of the trial court which had denied Frey relief, and we noted that, although a private land owner has the duty to

disclose material defects to prospective buyers, a similar duty was not imposed on Tax Claim Bureaus under the Law. Therefore, the doctrine of caveat emptor applied.

5. 111 Pa.Cmwlth. 73, 533 A.2d 491 (Pa.Cmwlth. 1987), *rev'd,* 522 Pa. 230, 560 A.2d 1388 (1989).

assignee, by any lien creditor or by any other person, **except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale.**

72 P.S. § 5860.607(g) (emphasis added). As noted above, the fact that Common Pleas had confirmed the judicial sale did not prevent it from later declaring the sale void because of a lack of proper notice, because that precise scenario is provided for in Section 607(g). Accordingly, the fact that the sale was confirmed neither affected the authority of Common Pleas to subsequently set the sale aside because the Law was violated, nor did it prohibit Common Pleas from subsequently entertaining the McCloskeys' petition for return of their bid price.

■ Finally, the Bureau argues that the McCloskeys' petition was barred by the doctrines of collateral estoppel and res judicata. Collateral estoppel or issue preclusion forecloses relitigation in a subsequent action of a necessary issue that was actually litigated in a prior proceeding. *Lamborn v. Workmen's Compensation Appeal Board (Armoroso Baking)*, 656 A.2d 593 (Pa.Cmwlth.1995). Accordingly, collateral estoppel will apply if:

> 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party ... to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574–75, 345 A.2d 664, 668 (1975) (citations omitted). Likewise, the doctrine of claim preclusion, or res judicata, operates to preclude a claim only where there is an identity of the following:

> (1) the subject matter, (2) the cause of action, (3) the parties, and (4) the quality or capacity of the parties suing or being sued.

*Glade Park East Home Owners Assoc. v. Public Utility Commission*, 156 Pa.Cmwlth. 466, 628 A.2d 468, 474 (Pa.Cmwlth.1993). Based upon the above, the Bureau argues

that the McCloskeys should have sought relief during the pendency of the matter before Common Pleas which resulted in the determination to set aside the judicial sale; otherwise, the issue was barred under one of the preclusionary doctrines. We do not agree. It is clear that the McCloskeys were not parties to the proceedings to determine whether proper notice had been provided prior to the judicial sale. Although the law is clear that a successful bidder has standing to file exceptions to an order setting aside a judicial sale, *M.J.M. Financial Services, Inc. v. Burgess by Dignazio*, 111 Pa.Cmwlth. 301, 533 A.2d 1092 (1987), there is no requirement in the Law or case law that a successful purchaser *must* intervene in a petition to set aside a judicial sale in order to claim the purchase price paid. Therefore, the identity of parties, which is an essential element required for both doctrines to be applicable, is absent in the present case.

Moreover, there was a significant difference between the two proceedings. The inquiry in the proceedings to set aside the sale concentrated solely on whether or not the Bureau had complied with the notice requirements under the Law. But, the McCloskeys' petition focused on their entitlement to a refund of the bid price. Therefore, for purposes of collateral estoppel, the issue litigated in the prior proceeding, *i.e.*, whether the Bureau gave proper notice of the sale, was not an issue litigated in the subsequent determination of whether the Bureau should refund the McCloskeys' bid price. Likewise, for res judicata purposes, the subject matter of the two proceedings was vastly different. The first hearing determined whether the Law had been complied with as to notice; the second hearing determined whether the successful bidders were entitled to receive their bid price back from the Bureau. Accordingly, because the two proceedings involved factually and legally distinct issues, neither collateral estoppel nor res judicata applies to the present case, and we reject the Bureau's argument in this respect.

Order affirmed.

### ORDER

**NOW**, November 19, 1998, the order of the Court of Common Pleas of Northampton

County in the above-captioned matter is hereby affirmed.