Emery W. Dawes, Inc., Appellant v. Commonwealth of Pennsylvania. Pennsylvania Liquor Control Board, Appellee.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Thomas M. Nocella,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Kenneth W. Makowski,* Acting Chief Counsel, and *Harvey Bartle III,* Acting Attorney General, for appellee.

OPINION BY JUDGE CRAIG, December 12, 1980:

Emory W. Dawes, Incorporated (licensee) appeals from an order of the Court of Common Pleas of Philadelphia County, which affirmed the imposition of a $300 fine and revocation of licensee's Sunday liquor sales permit by the Pennsylvania Liquor Control

Board (PLCB), on the ground that licensee had furnished false information to the PLCB regarding sales of food and beverages in connection with its application for a Sunday permit under Section 406 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-406.

After hearing the case de novo, the trial court found that the PLCB had established that licensee had sumitted false information, based on the following facts.

Licensee applied for the Sunday permit in August 1978 and certified that from September 19, 1977 to August 8, 1978, its total sales were $37,028, of which $15,268, or 41.3%, represented sales of food and non-alcoholic beverages; thus licensee represented sales of alcoholic beverages totalling $21,760. Section 406 requires, as a condition of receiving a Sunday permit, that a minimum of 40% of a licensee's total sales be sales of food and non-alcoholic beverages.

The court concluded that testimony by a PLCB investigator demonstrated that licensee's sales of alcoholic beverages in fact totaled $33,969 in that period, as opposed to the submitted figure of $21,760; taking into account the submitted figure of $15,268 in sales of food and non-alcoholic beverages, the relevant percentage was in fact 31%, as opposed to the 41.3% figure submitted by the licensee.

The court thus affirmed the action taken by the PLCB and dismissed licensee's appeal.

Our scope of review is limited to a determination of whether the board's order is supported by sufficient evidence and whether or not the lower court committed an error of law or abused its discretion. The question here is thus whether the PLCB's revocation order is supported by substantial evidence. *Diana Appeal*, 31 Pa. Commonwealth Ct. 363, 375 A.2d 1386 (1977).

"The substantial evidence required to support findings of an administrative agency is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rabinowitz v. Unemployment Compensation Board,* 15 Pa. Commonwealth Ct. 51, 55, 324 A.2d 825, 827-8 (1974).

Licensee here contends that the calculation employed by the PLCB, and accepted by the court, was erroneous in several respects.

Licensee initially challenges the markup ratios[1] used by the investigator as being unexplained. However, the investigator explained them in sufficient, although very general, terms. Because the licensee offered no evidence to discredit them, the court was justified in accepting them.

Licensee's major claim is that the PLCB did not credit licensee with high enough closing inventory figures; higher ending inventory figures produce lower alcoholic sales figures. First, licensee asserts that the allowance of only $500 as beer inventory at the close of the period is wrong. The court accepted that value on the basis of the investigator's testimony, which stated that the licensee supplied the $500 figure to him; licensee controverted that testimony, claiming that final beer inventory was "about $2000." The question is plainly one of credibility; we will not disturb the court's resolution of that conflict.

Secondly, licensee claims that the PLCB "did not consider any [closing] inventory for whiskey or wine in his computation." Although we have had to search through the record because no clear compendium or exhibit of the calculations has been presented to us, we have analyzed all the figures on this point.

The investigator testified, as noted above, that total sales of alcoholic beverages came to $33,969. De-

[1] The investigator was speaking of sales price divided by cost.

ducting from that figure the sum of $29,563 for beer
sales revenue (which we have calculated in a foot-
note[2]) leaves $4,406 as the sales value of licensee's
liquor and wine sales.

When we compare that liquor and wine sales re-
ceipts result of $4,406 to the figure of $5,767 agreed
to be the liquor and wine initial cost (with no begin-
ning inventory), a substantial closing inventory figure
for liquor and wine is indicated, approximately $4,135,
according to our analysis.[3]

---

[2] The investigator testified that he employed the following
methodology: (1) he assumed an initial alcoholic beverage inventory
of zero; (2) the licensee's records showed that he purchased liquor
and wine with a cost value of $5,767 and beer at a cost value of
$9,144 over the period in question; (3) licensee's end-of-period beer
inventory had a cost value of $500; (4) 50% of beer sales were
take-out purchases, with no allowance for spillage, and the remain-
ing 50% of sales were over-the-counter sales for consumption on the
premises, to which a spillage allowance of 10% was applied (i.e.,
10% of 50% of beer sales); and (5) all beer sales figures were
calculated using a sale price/cost ratio of 3.6 to 1 and liquor sales
calculations used a ratio of 2.7 to 1.

Based on the above facts, the cost value of beer sold over the period
was $9,144—$500 (final inventory), or $8,644. Half of this beer, at
a cost value of $4,322, was sold for take-out, with no spillage al-
lowance; using the 3.6 ratio, these beer sales generated 3.6 x $4,322,
or $15,559 in sales revenue for take-out. The remaining half, again
at a cost value of $4,322, was sold for consumption on the premises,
subject to an allowance of 10% spillage; therefore 90% of that
value, or $3,890, represents the cost value of over-the-counter beer
sales. Applying the 3.6 ratio results in a sales figure of $14,004 for
beer sold for immediate consumption.

The sum of these two beer sales figures, i.e., $15,559 (take-out) plus
$14,004 (over-the-counter), is $29,563.

[3]

|  | $5,767 Cost |
|---|---|
|  | 4,135 Closing Inventory at Cost |
| Cost of Liquor/Wine Sold | $1,632 |
|  | x  2.7 Markup Ratio |
|  | $4,406 Sales Receipts |

The licensee contends for a closing liquor and wine inventory a figure of $3,000. But, as noted above, the court could mathematically infer that the PLCB credited the licensee with a closing liquor inventory figure even higher than that for which he contends, closer to licensee's claim of $5,000 or $5,500 as his total closing inventory for liquor, wine and beer.

Obviously, a lower ($500) closing inventory for beer (with higher markup) and the higher closing inventory for liquor and wine (with lower markup) could be at the heart of the licensee's difficulty, which is insuperable because it rests, as noted above, on matters of credibility within the exclusive province of the trial judge.

Because the conclusion of the trial judge, based on the evidence, cannot be dismissed as impossible or beyond reason, we affirm the decision.

ORDER

AND Now, this 12th day of December, 1980, the November 19, 1979 order of the Court of Common Pleas of Philadelphia County at Misc. 79/05-2355 is affirmed.