### SHENANIGANS OF LAKE HARMONY, INC.

v.

### PENNSYLVANIA LIQUOR CONTROL BOARD.

**Pennsylvania State Police, Bureau of Liquor Control Enforcement, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided Jan. 17, 1995.

Donald K. Gardner, Asst. Counsel, for appellant.

Patrick M. McHugh, for appellee.

Before SMITH and NEWMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals a Carbon County Court of Common Pleas determination which reversed that portion of the Pennsylvania Liquor Control Board's (Board) order revoking a Sunday Sales Permit held by Shenanigans of Lake Harmony, Inc. (Shenanigans or licensee).

The facts giving rise to this case are as follows. Shenanigans held a hotel liquor license and a Sunday Sales Permit issued by the Board. On March 17, 1992, the Bureau cited Shenanigans for a violation of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1–101—9–902. This citation charged:

1) You, by your servants, agents or employes, furnished false information regarding sales of food and beverages when applying for a Sunday Sales Permit on June 3, 1991, in violation of Section 406(a)(3) of the Liquor Code, 47 P.S. § 4–406(a)(3) and Section 11.172 of the Liquor Control Board Regulations, 40 Pa.Code § 11.172; and

2) You, by your servants, agents or employes, failed to maintain complete and truthful records covering the operation of your licensed business for a period of two (2) years immediately preceding January 2, 1992, in violation of Section 493(12) of the Liquor Code, 47 P.S. § 4–493(12).

Section 406(a)(3) of the Liquor Code requires that, to be eligible for a Sunday Sales permit, a licensee's sales of food and nonalcoholic beverages must equal 40% or more of its combined gross sales of both food and alcoholic beverages. On June 3, 1991, Shenanigans completed a certified renewal application which provided that for the certification period June 1, 1990 through May 31, 1991 its sales of food and nonalcoholic beverages were equal to 41.02% of its combined gross sales of both food and alcoholic beverages. The Bureau examined Shenanigans' records and determined that its sales of food and nonalcoholic beverages were instead equal to 22.44% of its combined gross sales of both food and alcoholic beverages.

After hearings on the matter, the Administrative Law Judge (ALJ) found that Shenanigans had furnished false information in obtaining a renewal of its 1991/1992 Sunday Sales Permit and failed to maintain complete and truthful records. He determined that "[f]or the certification period June 1, 1990 to May 31, 1991, Licensee's food and nonalco-

holic beverage sales were no more than 32% of its total sales of food plus alcoholic beverages." As a result, the ALJ merged counts one and two and instituted a $450.00 fine, a three-day suspension of Shenanigans' liquor license beginning May 10, 1993 and a revocation of Shenanigans' Sunday Sales Permit. This revocation was to be effective at 7:00 a.m. on June 21, 1993 for the remainder of the 1992/1993 licensing year (or until July 31, 1993).

On appeal, the Board affirmed, with the modification that the three-day suspension of Shenanigans' liquor license was to begin on August 30, 1993 and revocation of the Sunday Sales Permit was to be effective on September 20, 1993 for the remainder of the 1993/1994 licensing year. This order increased the revocation period of Shenanigans' Sunday Sales Permit by forty-two Sundays. On appeal to the trial court, the parties did not dispute the findings of fact determined below. The trial court affirmed the Board's decision in part, reversing only with respect to the revocation of the Sunday Sales Permit. The trial court determined that the ALJ and the Board did not have the authority to revoke this permit. The Bureau now appeals to this Court.

■ The sole question the Bureau raises for our review is whether the trial court erred in "vacating" the revocation of Shenanigans' Sunday Sales Permit.[1]

The Bureau argues that the ALJ and the Board may suspend or revoke a Sunday Sales Permit for violations of Section 406(a)(3) of the Liquor Code and Section 11.172 of the Liquor Control Board Regulations. The Bureau contends that this power is granted by virtue of Section 471 of the Liquor Code [relating to the revocation and suspension of licenses and the imposition of fines]. Section 471 provides in relevant part:

(a) *Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws ... the enforcement bureau may, within one year from the date of such violation or cause appearing, cite such licensee to appear before an administrative law judge,* not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, *to show cause why such license should not be suspended or revoked or a fine imposed, or both.*

(b) Hearing on such citations shall be held in the same manner as provided herein for hearings on applications for license. *Upon such hearing, if satisfied that any such violation has occurred or for other sufficient cause, the administrative law judge shall immediately suspend or revoke the license, or impose a fine* of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000), *or both,* notifying the licensee by registered letter addressed to his licensed premises.

47 P.S. § 4–471(a) and (b). (Emphasis added).[2]

Although the Bureau recognizes that section 471 does not specifically refer to an ALJ's power to suspend or revoke a Sunday Sales Permit, it asserts that the ALJ has

---

1. Our Supreme Court stated in *Adair v. Pennsylvania Liquor Control Board,* 519 Pa. 103, 114–115, 546 A.2d 19, 25 (1988):

The trial court's responsibility is to conduct a *de novo* hearing or review, make a determination of the facts and applicable law, and then sustain, reject, alter or modify the penalty imposed by the Board. This is so whether the lower court hears the evidence anew, takes additional testimony or merely reviews the official transcript of the proceedings before the Board....

Thus, we hold that in an appeal from a decision of the Board pursuant to section 471 of the Liquor Code, the lower court is to conduct a *de novo* review, and in the exercise of its statutory discretion, make findings and conclusions. Based upon its *de novo* review, the lower court may sustain, alter, change or modify the penalty imposed by the Board. To be sure, the authority to alter, change[,] modify or amend a Board imposed penalty may be exercised by the trial court whether or not it makes findings which are materially different from those found by the Board. (Citation omitted) (Footnote omitted).

*See also Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.,* 536 Pa. 254, 639 A.2d 14 (1994).

2. Actually, the Sunday Sales Permit is a form of liquor license.

such authority under this section since a permit is ancillary to a liquor license. The Bureau also contends that the ALJ and the Board may suspend or revoke a Sunday Sales Permit for a violation which occurred in a previous permit year, because it would be impracticable to do otherwise given the procedural timeline for investigating violations and effecting penalties.

In explaining why the ALJ and the Board did not have the power to revoke a Sunday Sales Permit, the trial court stated that the statute did not expressly give such authority. It also pointed out that there was no evidence that Shenanigans' 1992/1993 and 1993/1994 permits were not held properly. The trial court recognized the limitations on the powers of administrative agencies and held "that the ALJ and the Board are without authority to revoke a Sunday Sales Permit as a penalty for a violation occurring in some prior year, since there is no stated power to support the imposition of such a penalty." (Trial Court Opinion, pp. 4–5).

The trial court then said: "This conclusion does not render either the ALJ or the Board impotent. Given that the authority to suspend or revoke the underlying liquor license exists, the ALJ or Board can always render any Sunday Sales Permit a nullity simply by suspending or revoking the licensee's authority to do business." (Trial Court Opinion, p. 5). The Bureau argues that this suggested remedy is harsh and excessive, and that the penalty cannot fit the violation where it is necessary to suspend or revoke a liquor license for a violation pertaining to a Sunday Sales Permit.

First, let us acknowledge, as we must, the plethora of case law delineating the limitations of administrative agency authority. *See, inter alia, Central Electric Cooperative, Inc. v. Pennsylvania Public Utility Commission,* 111 Pa.Commonwealth Ct. 223, 533 A.2d 1084 (1987); and *Kentucky Fried Chicken of Altoona v. Unemployment Compensation Board of Review,* 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973), cited by

both Shenanigans and the trial court. Such cases obviously concern themselves with curbing potential abuses of power by administrative agencies.

As our Supreme Court stated in relevant part in *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.,* 476 Pa. 302, 310, 382 A.2d 731, 736 (1978): "[o]nly those powers within the legislative grant *either express or necessarily implied,* can be exercised by the administrative body." (Emphasis added). Here, section 471(b) is clear that the ALJ may suspend or revoke a liquor license for violations of the Liquor Code or the Board's regulations, and section 406(a)(3) provides that Sunday Sales Permits are available to liquor licensees who meet certain sales ratio requirements. Since issuance of a liquor license is a prerequisite to the issuance of a Sunday Sales Permit, and such a permit only relates to a licensee's ability to sell liquor between certain hours on Sundays and Monday mornings, we agree with the Bureau that inherent in an ALJ's power to suspend or revoke a liquor license is his or her power to suspend or revoke a Sunday Sales Permit.

This is true even though section 471 does not expressly set forth this power because, given the permit's ancillary nature, no other conclusion is reasonable or could logically have been intended by the legislature. In order to sell liquor or beer on Sunday, Shenanigans had to meet the 40% requirement, which it did not. Instead, the ALJ found that Shenanigans furnished false information and failed to keep complete and truthful records. What penalty for Shenanigans' Sunday sales infraction could be more logical than disallowing it from selling liquor and beer on Sundays? Therefore, the power of the ALJ and the Board to suspend or revoke a liquor license is necessarily implied as within the legislative grant.[3]

Moreover, as the Bureau contends, to determine otherwise would, in the case of first time violations of Section 406(a)(3), force the ALJ and the Board to suspend or revoke a liquor license in order to meet their true

3. We note that this Court has previously upheld permit revocations for violations of Section 406 of the Liquor Code. *See Dawes, Inc. v. Pennsylvania Liquor Control Board,* 55 Pa.Commonwealth Ct. 301, 423 A.2d 1067 (1980); *Bennetts' Dew Drop Inn, Inc. v. Pennsylvania Liquor Control Board,* 18 Pa.Commonwealth Ct. 586, 337 A.2d 295 (1975).

goal—suspension or revocation of a Sunday Sales Permit. It cannot be argued that such a penalty in the face of this type of a violation would be anything but harsh, unfair and excessive. As such, it could not stand.

■ With respect to the fact that the violation did not occur in the same permit year as the revocation, we hold that, since the ALJ may suspend or revoke a liquor license in a year in which no violation occurred, it would be illogical that he or she could not also do so with regard to Sunday Sales Permits. It would be rare that a proceeding for a Sunday sales violation, if contested, would terminate in time for the imposition of a penalty in the same permit year. (Of course, any appeal would extend that time). Therefore, the fact that the false information which Shenanigans supplied relates only to its 1991/1992 permit is, contrary to the assertion of both the trial court and Shenanigans, of no moment.

Because we have decided that the trial court erred when it held that the Bureau could not revoke Shenanigans' Sunday Sales Permit, we reverse that part of its determination. This case is remanded to the trial court for remand to the Board for the imposition of a *reasonable* penalty for Shenanigans' violations of the Liquor Code relating to its Sunday Sales Permit.

### ORDER

AND NOW, this 17th day of January, 1995, the order of the Court of Common Pleas of Carbon County, dated October 26, 1993, No. 93–1649, is affirmed in part and reversed in part. The case is remanded to the trial court for remand to the Pennsylvania Liquor Control Board for the imposition of a reasonable penalty consistent with this opinion.

Jurisdiction Relinquished.